UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| West Publishing Corporation, | Case No. 18-cv-1445 (DSD/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| LegalEase Solutions, LLC, | |
| Defendant. | |

This matter is before the Court on Plaintiff West Publishing Corporation's ("West") Motion to Compel Production of Documents in Response to Subpoena *Duces Tecum* from ROSS Intelligence, Inc. ("ROSS"). (Dkt. 62.) For the reasons set forth below, West's motion is granted in part and denied in part. With respect to the remaining issues regarding cost-shifting of attorneys' fees incurred in connection with ROSS's production of communications made via the cloud-based platform Slack, search terms and custodians, and ROSS's privilege log, the Court will hold a telephonic hearing on December 9, 2019 at 3:30 p.m. on those issues. ROSS and West shall file on CM/ECF a four-page letter by December 6, 2019, setting forth their respective positions with respect to those disputes. They shall not raise any new issues in those letters.

## I.  BACKGROUND

West brought this case against LegalEase Solutions, LLC ("LegalEase") on May 25, 2018, alleging breach of contract. (Dkt. 1.) The Complaint accuses LegalEase of

breaching the subscription agreement between the parties.  (*Id.* ¶ 67.)  West alleges LegalEase "deployed computer programs, automated processes, or 'bots' to capture and store Westlaw® information, and shared Westlaw® passwords with multiple individuals . . . ."  (*Id.* ¶ 8.)  LegalEase allegedly provided a "machine learning" client—ROSS— with Westlaw data taken between July 2017 and January 2018.  (*Id.* ¶¶ 8-9; *see* Dkt. 64 at 3.)  In addition to monetary damages and specific performance of the subscription agreement, West seeks injunctive relief enjoining LegalEase from utilizing any data obtained in violation of the subscription agreement.  (Dkt. 1 ¶¶ 63-65.)  On July 18, 2018, LegalEase filed an Answer to the Complaint, which included counterclaims against West for breach of contract.  (Dkt. 15 at 34-37.)

The initial deadline for fact discovery in this matter was set for February 19, 2019.  (Dkt. 30.)  West moved to amend the pretrial schedule (Dkts. 31-35) on February 18, 2019 and asked the Court to compel LegalEase to comply with its discovery obligations (Dkt. 36).  On March 14, 2019, the Court held a telephonic status conference regarding West's motion to amend the pretrial schedule (Dkts. 31-35), discovery disputes raised in West's March 12, 2019 letter (Dkt. 36), and the parties' discovery disputes raised in their March 12, 2019 emails to the undersigned's chambers (Dkt. 37).  The Court resolved the parties' disputes via its Informal Dispute Resolution process (Dkts. 37, 42, 43), and on April 1, 2019, the Court granted West's motion to amend the pretrial schedule (Dkt. 31) and extended the deadline for fact discovery to July 1, 2019 (Dkt. 46).

On June 28, 2019, West again moved to amend the pretrial schedule "to obtain documents from certain third parties and to conduct previously noticed depositions and

additional depositions." (Dkts. 49, 51, 52.) In response, LegalEase asked the Court to deny West's motion or extend fact and expert discovery by only forty-five days instead of ninety days as requested by West. (*Compare* Dkt. 51, *with* Dkt. 57.) In the July 18, 2019 Order (Dkt. 61), the Court granted, in part, West's motion to allow sufficient time to complete contemplated fact discovery, including the subpoena *duces tecum* West served on ROSS on June 14, 2019 (the "Subpoena").

The Subpoena requested four categories of documents, which are set forth below.

**Request for Production No. 1**

Any and all documents and communications with LegalEase, its affiliates, and its contractors, including but not limited to, Morae Global, Clutch Group, Kelly Services, and LegalEase India.

**Request for Production No. 2**

Any and all documents and communications concerning LegalEase's provision (either directly or indirectly) of Westlaw information and information derived therefrom to ROSS, including but not limited to headnotes, notes of decision, and the West Key Number system.

**Request for Production No. 3**

Any and all documents and communications concerning ROSS's relationship and dealings with LegalEase.

**Request for Production No. 4**

Any and all documents and communications concerning ROSS's agreements with LegalEase pursuant to which LegalEase performed services or provided goods to ROSS, including, but not limited to:

> (i) the Master Services Agreement and Statement of Work between LegalEase on the one hand and ROSS on the other hand, dated October 15, 2015;
>
> (ii) the "Statement of Work II for ROSS Bulk Memos"

3

>entered into between LegalEase on the one hand and ROSS on the other hand dated September 15, 2017;
>
>(iii) the "Statement of Work for ROSS Variation" entered into between LegalEase on the one hand and ROSS on the other hand dated November 10, 2017; and
>
>(iv) the "Statement of Work for ROSS Classifier" entered into between LegalEase on the one hand and ROSS on the other hand dated December 26, 2017.

(Dkt. 65-1, Ex. A at 4-5.)

On June 28, 2019, ROSS responded with nine general objections and then specifically objected to each of the four categories of documents requested in the Subpoena. (Dkt. 65-2, Ex. B ("June 28 Letter").) On September 24, 2019, West filed a motion to compel production of documents from ROSS in response to the Subpoena. (Dkt. 62.) West sought production of responsive documents "in whatever form those documents exist," including communications from the Slack messaging application used by ROSS employees. (Dkt. 64 at 2; *see generally id.*) ROSS and West also disputed how to allocate costs with respect to the production of those Slack communications, the sufficiency of the descriptions in ROSS's privilege log, and whether ROSS has properly asserted attorney-client privilege and/or work-product protection (collectively, "ROSS's assertions of privilege") over certain documents. (*See generally id.* at 16-21.) In its opposition, ROSS asked the Court to award the costs, including attorneys' fees, it had incurred to date in responding to the Subpoena. (*See* Dkt. 74 at 2, 23-24.) On September 27, 2019, West and LegalEase filed a stipulation to extend the deadline for fact discovery for certain specified discovery, including depositions and production of documents from

4

ROSS under the Subpoena. (Dkt. 71.) The Court then extended the deadline for fact discovery to October 25, 2019. (Dkt. 73.)

On October 16, 2019, the Court held a hearing on West's motion to compel, at which counsel presented their arguments. (Dkt. 83.) During the hearing, the Court required West and ROSS to meet and confer over search terms and costs for the production and review of the Slack communications, as it appeared that West and ROSS had not fully done so regarding those issues. (Dkt. 86 at 50:21-51:21.)

On October 25, 2019, West and LegalEase filed another stipulation to extend fact discovery, in which parties stated their intentions to meet and confer regarding the outstanding disputes. (Dkt. 87 ¶¶ 2-3.) On October 29, 2019, the Court ordered West and ROSS to provide an update regarding the meet-and-confers, any agreement made regarding the Slack communications, their discussions regarding additional search terms, and the dispute over ROSS's privilege log. (Dkt. 89.)

On November 1, 2019, West filed a letter indicating ROSS and West had resolved certain disputes. (Dkt. 90.) Although the issues have narrowed somewhat, disputes remain as to (1) ROSS's communications with third parties; (2) ROSS's production of "answer files" (also referred to as "memos" or "memoranda"); (3) production of Slack communications; (4) ROSS's privilege log; and (5) cost-shifting for the $80,000 ROSS incurred by complying with the Subpoena and the production of Slack communications. (*Id.*)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26 sets forth the scope of discovery in general:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 45 permits a party to request the production of documents, electronically stored information, or tangible things from the responding person. Fed. R. Civ. P. 45(a)(1)(D). When a non-party does not comply with an otherwise valid subpoena, "the serving party may move the court . . . for an order compelling production or inspection."[1] Fed. R. Civ. P. 45(d)(2)(B)(i). The serving party must avoid imposing an undue burden or expense, and the Court must enforce this duty. Fed. R. Civ. P. Rule 45(d)(1). Although the responding person "need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost . . . the person responding must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 45(e)(1)(D).

When courts compel a non-party to comply with a subpoena, Rule 45 requires protection against "significant expense resulting from compliance." Fed. R. Civ. P.

---

[1] West and ROSS have agreed for purposes of the Subpoena to treat the place of compliance as Minnesota. (Dkt. 65-2, Ex. B.)

6

45(d)(2)(B)(ii). Absent significant expense, the responding party must "absorb the costs of responding to that subpoena." *Paisley Park Enter., Inc. v. Boxill*, No. 17-cv-1212, 2019 WL 1036059, at *5 (D. Minn. Mar. 5, 2019) (citing *Honda Lease Tr. v. Middlesex Mut. Assur. Co.*, No. 3:05-cv-1426, 2008 WL 349239, at *5 (D. Conn. Feb. 6, 2008)).

To determine whether a subpoena imposes a "significant expense" under Rule 45, courts consider the "circumstances of a particular case." *United States v. McGraw-Hill Cos., Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014). Specifically, courts consider three factors including "(1) the recipient's interest in the outcome of the case; (2) whether the recipient can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance." *Paisley Park Enter.*, 2019 WL 1036059, at *5 (citing *In re Honeywell Int'l, Inc. Sec. Lit.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003)).

### III. DISCUSSION

The Court addresses each Request for Production below, along with issues relating to ROSS's privilege log and ROSS's requests for cost-shifting.

**A.     Request for Production No. 1**

Request for Production No. 1 seeks ROSS's communications with third parties that West believes ROSS had contracted with to perform services, including Morae Global, Clutch Group, Kelly Services, and LegalEase India. West argued this request seeks relevant information because "[a]ccording to LegalEase, [ROSS] contracted with these entities to perform services for ROSS, including providing material to ROSS that West believes contains information taken directly from Westlaw in violation of LegalEase's subscription agreement." (Dkt. 64 at 11.) In its brief, West questioned the

7

validity of ROSS's search for responsive documents, including because ROSS did not use the entities' names as search terms. (Dkt. 64 at 12.) ROSS responded that it had already produced responsive communications with LegalEase India and, as to the other three entities, that it had consulted with "knowledgeable personnel within the company" and none of them had any knowledge of communications with Morae Global, Clutch Group, Kelly Services, or LegalEase India, and in fact had "no knowledge at all of the first three." (Dkt. 74 at 13.) Thus, ROSS asserted that "it does not *have* responsive documents." (*Id.*) In its reply, West sought, in the alternative, written certification from ROSS that it conducted a reasonable search and that no such documents exist under Request No. 1. (Dkt. 82 at 3.)

At the hearing, ROSS described its investigation and explained why it believed no additional responsive documents existed. (*See* Dkt. 86 at 37:21-38:22.) ROSS also stated that it was willing to provide a written certification to that effect. Accordingly, West's motion is granted insofar as it seeks a written certification from ROSS with respect to Request for Production No. 1.[2] Within seven days from the date of this Order, ROSS shall serve on West a written certification made by an officer of ROSS under

---

[2] The Court is not inclined to grant a motion to compel for documents that appear, based on the available record before the Court, not to exist. *See generally, VICA Coal Co., Inc. v. Crosby*, 212 F.R.D. 498, 501 (S.D. W.Va. 2003) (denying a motion to compel where the party moved for documents that did not exist, while failing to provide even a scintilla of evidence that the defendant was anything less than completely truthful*); Davis v. Kissinger*, 2009 WL 63565 at *2 (E.D. Cal. Jan. 8, 2009) ("This court cannot compel the defendant to produce documents that do not exist or are not in her possession or control."); *Century Indus. Co. v. Rosemount Inc.*, No. Civ. 01-103 (DWF/AJB), 2002 WL 1035455 at *2 (D. Minn. May 21, 2002).

8

penalty of perjury that a reasonable search has been conducted and no additional documents responsive to this request exist.

**B.     Request for Production Nos. 2 and 3**

Request for Production No. 2 seeks documents and communications relating to LegalEase's provision of Westlaw data to ROSS and Request for Production No. 3 seeks documents and communications relating to ROSS's relationship with LegalEase. Both requests generally seek documents relating to ROSS and LegalEase's relationship, so the Court will address them jointly. West raised several specific issues with respect to ROSS's production, which the Court addresses below.

**1.     Answer Files**

West seeks additional "answer files" that LegalEase created for ROSS. (Dkt. 64 at 4.) ROSS responded that it had produced them on July 25, 2019 in .json format, which is "an open-standard style format with human readable text, in which they were maintained," and reproduced them in Word format on August 14, 2019. (Dkt. 74 at 4-5; Dkt. 76 ¶¶ 12, 22-23.) In its reply, West asserted that it was still unclear whether ROSS had produced all relevant answer files. (Dkt. 82 at 3-4.)

At the hearing, West explained that while LegalEase produced over 27,000 answer files, ROSS only produced around 26,000, leaving approximately 1,000 unaccounted for. (Dkt. 86 at 19:13-20:2, 49:2-12.) West also believes that answer files are missing because ROSS originally produced them in the .json format, but LegalEase has not produced the files in that format. (*Id.* at 20:3-7, 13:18-20.) In its reply, West sought a written certification from ROSS with respect to the answer files. (Dkt. 82 at 4.)

Accordingly, if ROSS is unable to located any additional answer files after a reasonable search, within seven days from the date of this Order, ROSS shall serve on West a written certification made by an officer of ROSS under penalty of perjury that a reasonable search has been conducted for any additional answer files (in .json or Word format) and no additional responsive documents exist.

### 2.     Search terms and custodians

The Court will not recap the parties' positions as to search terms here because based on their update, West and ROSS now dispute only whether ROSS should be permitted to exclude internal discussions of West and Westlaw as a competitor or potential competitor from results that hit upon the term "Westlaw" and whether ROSS should run "Lexis" as a search term.  (Dkt. 90 at 1-2.)  These specific issues were not previously raised with the Court, and West requested additional briefing with respect to these terms.  (*Id.* at 2.)  West and ROSS also "have not reached complete agreement as to proposed custodians."  (*Id.* at 3.)  If West and ROSS are unable to resolve their issues with respect to the "Westlaw" and "Lexis" search terms and custodians, they should present their arguments in their December 6 letters.

### 3.     Google sheets

In its reply, West stated that Tariq Hafeez, President of LegalEase, testified at a deposition on October 9, 2019, that ROSS posed project questions to LegalEase through a Google sheet controlled exclusively by ROSS to which LegalEase no longer has access.  (Dkt. 82 at 2-3 & n.2.)  At the hearing, West argued the Google spreadsheet was a communication method that showed how certain memos were created.  (*Id.* at 16:13-18.)

10

ROSS responded that the information within the Google spreadsheets was contained within the memos already produced and that it was willing to provide a written certification to that effect. (Dkt. 90 at 39:20-40:1.)

Based on the update, "ROSS committed to producing any and all Google sheets in responsive to West's subpoena no later than Wednesday, November 6." (Dkt. 90 at 2.) Accordingly, the Court understands no dispute remains with respect to the production of the Google sheets.

### 4. ROSS Portal and documents stored on Box

In its reply, West asserted that ROSS has not produced relevant files exchanged through the "ROSS Portal."[3] (Dkt. 82 at 4.) At the hearing, West raised the question of documents stored on Box accounts. (Dkt. 86 at 13:16-18.) Counsel for ROSS stated that he believed all of the information provided to LegalEase was contained within the answer files, but agreed to discuss these issues with ROSS. (Dkt. 86 at 40:10-15.) The parties' update does not refer to the ROSS Portal or documents via Box. Thus, the Court understands any issues relating to those methods of communication are resolved.

### C. Request for Production No. 4

Request for Production No. 4 seeks documents and communications concerning ROSS's Master Service Agreements and Statements of Work with LegalEase insofar as LegalEase performed services or provided goods to ROSS. At the October 16 hearing, West confirmed ROSS had produced agreements "establishing [ROSS and LegalEase's]

---

[3] West describes the ROSS Portal as a web interface that allowed LegalEase to provide Westlaw data to ROSS electronically without using email. (Dkt. 86 at 15:15-20.)

11

contractual basis" but none of their corresponding drafts.  (Dkt. 86 at 19:4-14.)  West seeks production of the drafts "to understand whether or not the reliance on Westlaw was a critical part of the project scope."  (*Id.*)  Although ROSS indicated it has reasonably located responsive documents to this request, ROSS did not assert that drafts were not relevant to an issue in the case or burdensome to produce.  (Dkt. 74 at 16.)

The Court finds that the draft agreements sought by Request No. 4 are relevant to the claims asserted in this case and proportionate to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  Therefore, the Court grants West's motion with respect to Request No. 4 insofar as West seeks drafts of the agreements ROSS already produced, namely the Master Service Agreements and Statements of Work.  ROSS shall produce any drafts of those agreements to the extent they can be located after a reasonable search.  If ROSS is unable to locate any such documents, within seven days from the date of this Order, ROSS shall serve on West a written certification made by an officer of ROSS under penalty of perjury that a reasonable search has been conducted and no additional documents responsive to this request exist.

**D.    Slack Communications**

West seeks Slack communications from ROSS to the extent they are responsive to Request Nos. 1-4.  (Dkt. 64 at 16.)  In response to ROSS's concerns about burden and expense, West stated it was willing to share in some of the costs.  (*See id.* at 16-17; Dkt. 82 at 6; Dkt. 86 at 27:1-6.)  However, West maintains it is not obligated to share in the attorneys' fees incurred by ROSS in connection with its review of the Slack communications, and also contends that it needs more certainty as to what the costs

because it is "unwilling to write a blank check" as to the costs.  (Dkt. 86 at 27:8-13; Dkt. 82 at 6.)

At the hearing, the Court ordered ROSS to provide West with a more detailed estimate with respect to the Slack costs.  (Dkt 86. at 41:10-15.)  Based on the update, ROSS committed to providing West with detailed costs for producing the Slack communications but because the parties have not reached agreement as to custodians and search terms, it has not yet done so.  (Dkt. 90 at 2.)  At this point, given that West has already agreed to some form of cost-sharing with ROSS, the Court does not require additional certainty as to what those costs are to resolve how they should be shared.  West and ROSS shall share equally all costs incurred in connection with processing the Slack communications for production, including extracting, processing for review, de-duplicating, running search terms, and converting the results to a producible format for West.

West and ROSS disagree as to whether West should be required to contribute to ROSS's attorneys' fees incurred in connection with the production of the Slack communications, including reviewing for privilege and confidentiality.  (Dkt. 90 at 2-3.)  The Court notes that some courts have concluded that "attorney's fees incurred by the non-party that are necessary to a discovery proceeding under Rule 45 are expenses that may be shifted to the discovery-seeking party." *See, e.g.*, *In re American Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016).  If West and ROSS are unable to reach an agreement as to this issue, and without pre-judging any such motion, ROSS may move

the Court for compensation for reasonable attorneys' fees that are necessary to its production of Slack communications after the production is complete.

**E.    ROSS's Privilege Log**

ROSS and West first disagree as to whether ROSS may claim attorney-client privilege or work-product protection with respect to communications involving ROSS employee Thomas van der Heijden.  (*Compare* Dkt. 64 at 18-19, *with* Dkt. 74 at 20-21.) West initially contended that van der Heijden, while a Canadian lawyer, acted only in a project manager role at ROSS.  (*See* Dkt. 64 at 18.)  ROSS submitted a declaration from Andrew Arruda, the Chief Executive Officer of ROSS, establishing that van der Heijden is a licensed Canadian lawyer, has dual business and legal roles, and is ROSS's "principal in-house legal advisor."  (Dkt. 75 ¶¶ 1, 9.)  ROSS contends that it only withheld documents where van der Heijden was operating as in-house counsel.  (Dkt. 74 at 20-21.) In its reply, West disputed that privilege would apply to "*all* of Mr. van der Heijden's withheld communications."  (Dkt. 82 at 6.)  At the October 16 hearing, West stated that it was not relying on van der Heijden's status as a Canadian lawyer (instead of a U.S. attorney) as a basis for challenging privilege.  (*Id.* at 23:14-20.)  Rather, West viewed his status as a Canadian lawyer as evidence that van der Heijden was in fact not operating as a lawyer on behalf of ROSS.  (*Id.*)

If van der Heijden were involved in confidential communications with ROSS employees for the purpose of "facilitating the rendering of legal services to the client," those communications would be privileged.  *United States v. Beckman*, 787 F.3d 466, 482 (8th Cir. 2015).  However, when he "act[ed] in other capacities, such as a . . . business

14

advisor, the privilege [would] not apply." *United States v. Spencer*, 700 F.3d 317, 320-21 (8th Cir. 2012). Thus, the Court concludes that there <u>may</u> be communications on the privilege log involving van der Heijden over which ROSS may properly claim privilege or work-product protection.

However, West has also challenged the sufficiency of the descriptions in ROSS's privilege log, including the absence of "any basis supporting an evaluation of legal privileged or protections associated with an attorney practicing law." (Dkt. 64 at 19.) ROSS agreed to serve an updated privilege log on November 1, 2019. (Dkt. 90 at 3.) It is unclear to the Court what disputes remain regarding the updated log. Accordingly, if West still disputes ROSS's assertion of privilege, West shall identify 10 representative documents on the updated log for *in camera* review by December 4, 2019. ROSS shall provide copies of those documents to the Court by December 6, 2019, and West and ROSS shall address this issue in their December 6 letters.

**F.     ROSS's Request to Shift Already-Incurred Costs of $80,000**

ROSS seeks over $80,000 in attorneys' fees and costs incurred in responding to West's subpoena. (Dkt. 74 at 23-24.) However, ROSS did not provide notice to West that it would seek to shift any costs other than with respect to the Slack communications before filing its brief in opposition to West's motion to compel. (*See* Dkt. 86 at 36:22-37:6.) Because ROSS did not provide notice to West (other than with respect to the Slack communications) before making its production, the Court denies ROSS's request

15

for cost-shifting with respect to documents already produced by ROSS.[4] *See Spears v. First American Eappraiseit*, No. 5-08-cv-868, 2014 WL 6901808, at *4 (N.D. Cal. Dec. 8, 2014) (denying non-party's request for reimbursement under Rule 45 because "it would be unfair to require plaintiffs to reimburse [non-party] for costs relating to the negotiated productions . . . where [non-party] failed to inform plaintiffs that it would later seek reimbursement of over $450,000").

## IV.    ORDER

Based upon all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. West's Motion to Compel is **GRANTED** insofar as it seeks a written certification from ROSS with respect to Request for Production No. 1. Within seven days from the date of this Order, ROSS shall serve on West a written certification made by an officer of ROSS under penalty of perjury that a reasonable search has been conducted and no additional documents responsive to Request for Production No. 1 exist.

2. West's Motion to Compel is **GRANTED** insofar as it seeks a written certification from ROSS with respect to answer files. If ROSS is unable to locate any additional answer files, within seven days from the date of this Order, ROSS shall serve on West a written certification made by an officer of ROSS under penalty of perjury that a reasonable search has been conducted for any additional answer files

---

[4] The Court also denies this request on the grounds that it was raised in ROSS's opposition brief rather than made by motion.

(in .json or Word format) and no additional answer files responsive to Request for Production Nos. 2 and 3 exist.

3. West's Motion to Compel is **DENIED AS MOOT** with respect to the Google sheets, Ross Portal, and Box documents.

4. West's Motion to Compel is **GRANTED** insofar as it seeks production of responsive Slack communications, subject to the parties' agreement or a decision from the Court as to search terms and custodians.  West and ROSS shall share equally the costs of processing the Slack communications, including extracting, processing for review, de-duplicating, running search terms, and converting the results to a producible format for West.

5. West's Motion to Compel is **GRANTED** insofar as West seeks drafts of the agreements ROSS has already produced, namely the Master Service Agreements and Statements of Work, in response to Request for Production No. 4.  ROSS shall produce any drafts of those agreements to the extent they can be located after a reasonable search.  If ROSS is unable to locate any such draft agreements, within seven days from the date of this Order, ROSS shall serve on West a written certification made by an officer of ROSS under penalty of perjury that a reasonable search has been conducted and no draft agreements responsive to Request for Production No. 4 exist.

6. ROSS's request for cost-shifting with respect to documents already produced is **DENIED**.

7. As to the remaining issues relating to search terms and custodians, ROSS's assertions of privilege, and cost-shifting with respect to ROSS's attorneys' fees necessary to the production of the Slack communications, the Court will hold a telephonic hearing on any remaining issues on **December 9, 2019 at 3:30 p.m.** The parties shall present their arguments as to any remaining issues in letters of no more than four (4) pages filed on CM/ECF no later than **December 6, 2019**. If there is a still a dispute as to ROSS's assertions of privilege, West shall identify 10 representative documents from the updated privilege log for *in camera* review by **December 4, 2019** and ROSS shall provide copies of those documents to the Court by **December 6, 2019**.

8. The Court will issue an amended scheduling order at the conclusion of the **December 9, 2019** telephonic hearing.

DATED: November 22, 2019               <u>*s/Elizabeth Cowan Wright*</u>
                                                                ELIZABETH COWAN WRIGHT
                                                                United States Magistrate Judge